IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gail L. Rush-Shaw, | No. CV-12-00941-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| USF Reddaway Incorporated, | |
| Defendant. | |

Pending before the Court is Defendant USF Reddaway, Inc.'s Motion for Summary Judgment (Doc. 63) on Plaintiff Gail L. Rush-Shaw's single Title VII sex discrimination claim. Plaintiff filed a Response (Doc. 67) and Defendant filed a Reply (Doc. 71). The Court heard oral argument on April 22, 2014. The Court now rules on the Motion.

**I.     BACKGROUND**

For purposes of the Court's resolution of the pending summary judgment motion, the Court considers the relevant facts and background, viewed in Plaintiff's favor,[1] to be as follows.

Defendant USF Reddaway Incorporated is a service company with operations in Arizona and the West Coast: it carries and delivers its customers' freight. (Defendant's Statement of Fact ("DSOF"), Doc. 64 at ¶¶ 1, 3; Plaintiff's Separate Statement of Facts

---

[1] In the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

("PSOF"), Doc. 68 at ¶¶ 1, 3). Defendant maintains numerous terminals where the freight it ships for its customers is handled and loaded on trailers for delivery. (DSOF ¶ 4; PSOF ¶ 4). In 2007, Defendant merged with another freight carrier, Bestway. (DOSF ¶ 11; PSOF ¶ 11). Prior to the merger, Plaintiff Gail L. Rush-Shaw had been employed by Bestway since 1978 and, in July 2006, had assumed the position of Phoenix ("PHX") terminal manager. (DSOF ¶ 12; PSOF ¶ 12). Post-merger, Defendant employed Plaintiff, "at-will,"[2] as the PHX terminal manager from January 2007 until her termination on March 25, 2011. (DSOF ¶ 13; PSOF ¶ 13).

As terminal manager, Plaintiff bore the ultimate responsibility for all operations of the PHX terminal, including day-to-day operational and supervisory responsibilities over customer service, meeting customer specifications regarding deliveries and pickups, administration, employee hiring and discipline, sales, claims, safety, and facility maintenance. (DSOF ¶ 14; PSOF ¶ 14). Plaintiff reported to Doug Schuster ("Schuster"), Defendant's Divisional Vice President, Southern Division. (DSOF ¶ 17; PSOF ¶ 17). Both Plaintiff and Schuster considered PHX to be an "impact" terminal, meaning that the terminal had relatively high operations and revenue, such that events at the PHX terminal could affect the company and be visible. (DSOF ¶¶ 9–10; PSOF ¶¶ 9–10).

Post-merger and through the economic recession that followed, Defendant significantly downsized its staffing levels company-wide. (DSOF ¶¶ 146–153, 156, 162, 173; PSOF ¶¶ 146–153, 156, 162, 173). In fact, between 2007 and March 25, 2011, the number of employees at the PHX terminal was reduced from 170 to approximately 70. (DSOF ¶¶ 148–150; PSOF ¶¶ 148–150). Additionally, unlike most of Defendant's terminals, the PHX terminal employed union labor, which affected Plaintiff's ability to hire and fire some classes of employees. (DOSF ¶¶ 15, 155; PSOF ¶¶ 15, 155).

Following the 2007 merger, Defendant learned of significant customer service failures and various internal complaints at the PHX terminal under Plaintiff's

---

[2] Plaintiff's employment was at will: it could be terminated at any time without cause. (DSOF ¶ 16; PSOF ¶ 16).

management. (DSOF ¶¶ 19–22, 66; PSOF ¶¶ 19–22, 66). In January 2008, following an audit of the PHX terminal, Plaintiff was issued a "Notice of Corrective Action" ("NOCA") regarding serious performance concerns, including significant customer dissatisfaction with the Phoenix terminal. (DSOF ¶ 23; PSOF ¶ 23). The NOCA warned Plaintiff that "should similar or other performance problems or misconduct occur at any time in the future, [Plaintiff] will be subject to discharge." (DSOF ¶ 24, Ex. 14; PSOF ¶ 24). Plaintiff's performance improved and her 2008 and 2009 annual performance evaluations rated her as "meets expectations." (PSOF at Exs. 37–38).

In 2010, however, the PHX terminal's customer service drastically worsened.[3] (DSOF ¶¶ 29–33, 38–40, 91; PSOF ¶¶ 29–33, 38–40, 91). During the first three months of 2011 (January through Plaintiff's termination on March 25, 2011), Defendant received at least fourteen serious customer complaints about the PHX terminal and Plaintiff, including several threats that customers would cease hiring Defendant. (DSOF ¶¶ 41–65; PSOF ¶¶ 41–65). Defendant repeatedly stressed to Plaintiff that such complaints were unacceptable and could not continue. (DSOF ¶¶ 41, 44, 45, 47, 49–51, 53, 54, 57; PSOF ¶¶ 41, 44, 45, 47, 49–51, 53, 54, 57). After Schuster's supervisors expressed a "total lack of confidence" in Plaintiff's management due to the numerous serious customer complaints, on March 25, 2011, Schuster terminated Plaintiff's employment. (DSOF ¶¶ 65, 95–96, 102; PSOF ¶¶ 65, 95, 102).

On May 3, 2012, Plaintiff filed the instant suit alleging a single Title VII claim of sex discrimination in the termination of her employment. (Doc. 1).

## II. LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely

---

[3] Plaintiff did not receive a 2010 annual performance review prior to her March 25, 2011 termination. However, Schuster's draft 2010 evaluation notes that Plaintiff's "team building effectiveness has once again come into question as internal controls continue to fail, and her effectiveness with regards to internal and external cust[omer] suc[cess] & satisfaction has significantly diminished." (DSOF ¶ 95, Ex. 71; PSOF ¶ 95).

- 3 -

1  disputed must support that assertion by . . . citing to particular parts of materials in the
2  record, including depositions, documents, electronically stored information, affidavits, or
3  declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by
4  "showing that materials cited do not establish the absence or presence of a genuine
5  dispute, or that an adverse party cannot produce admissible evidence to support the fact."
6  *Id.* at 56(c)(1)(A)&(B). Thus, summary judgment is mandated "against a party who fails
7  to make a showing sufficient to establish the existence of an element essential to that
8  party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*
9  *v. Catrett*, 477 U.S. 317, 322 (1986).

10  Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.' " *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. Further, because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, . . . [t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor" at the summary judgment stage. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *Harris v. Itzhaki*, 183 F.3d 1043, 1051 (9th Cir. 1999) ("Issues of credibility, including questions of intent, should be left to the jury.") (internal citations omitted).

Moreover, the Ninth Circuit Court of Appeals "has set a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). As the Ninth Circuit has explained, "[w]e require very little evidence to survive summary judgment in a discrimination case, because the ultimate question is one that can only be resolved through a 'searching inquiry'—one that is most appropriately conducted by the factfinder, upon a full record." *Lam v. Univ. of Hawai'i*, 40 F.3d 1551, 1564 (9th Cir. 1994) (internal quotations omitted).

## III.  ANALYSIS

Plaintiff's Complaint (Doc. 1) consists of a single Title VII claim of sex discrimination. Specifically, Plaintiff alleges that because of her female sex, Defendant discriminated against her in the terms and conditions of her employment, including holding male managers to lower standards, pretextually terminating her employment, and replacing her with a less qualified male. (*Id.* ¶ 17). Defendant moves for summary judgment on the grounds that Plaintiff cannot establish a prima facie case of sex discrimination because there is not a genuine dispute of material fact that Plaintiff was terminated for poor performance. (Doc. 63 at 12–17).

### A.  Legal Framework for Disparate Treatment Sex Discrimination Claim

Title VII of the Civil Rights Act of 1964 prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). This provision of Title VII makes "disparate treatment" based on sex or race a violation of federal law. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061–62 (9th Cir. 2002) (citation omitted); *see Johnson v. Teltara, LLC*, No. CV 08-1894-PHX-JAT, 2010 WL 2873492, at *4 (D. Ariz. July 20, 2010).

To prevail on a Title VII claim, the plaintiff must prove that an adverse employment action was taken "because of" unlawful discrimination. *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 857 (9th Cir. 2002). Title VII disparate-treatment claims like Plaintiff's, "require the plaintiff to prove that the employer acted with conscious intent to

discriminate." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 805–06 (1973). Specifically, the plaintiff must show that (1) she belongs to a protected class, (2) she performed according to her employer's legitimate expectations, (3) she was subjected to an adverse employment action, and (4) similarly situated individuals outside her protected class were treated more favorably. *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (internal citations omitted). The Ninth Circuit "has explained that under the *McDonnell Douglas* framework, 'the requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.' " *Id.* (quoting *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)).

Furthermore, Courts employ a burden-shifting analysis for Title VII claims:

> [T]he plaintiff must establish a prima facie case of discrimination. If the plaintiff succeeds in doing so, then the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct. If the defendant provides such a reason, the burden shifts back to the plaintiff to show that the employer's reason is a pretext for discrimination.

*Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2004) (quoting *McDonnell Douglas Corp.*, 411 U.S. at 802–05). At the summary judgment stage, the plaintiff does not have to prove that the employer's reason for firing her was pretext for discrimination, but the plaintiff must introduce evidence sufficient to raise a genuine issue of material fact as to whether the employer's reason was pretextual. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000).

### B.   Plaintiff's Prima Facie Case of Discrimination

Here, Defendant only disputes[4] the second element of Plaintiff's prima facie case:

---

[4] Defendant does not dispute the first and third elements of Plaintiff's prima facie case because Plaintiff is a female whose employment was terminated by Defendant. (Doc. 63 at 11, n.7). Additionally, because Plaintiff was replaced by a male, the fourth element is beyond dispute. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (noting that the fourth *McDonnell Douglas* element, that similarly situated men were treated more favorably than Plaintiff, can be satisfied by a showing that Plaintiff was replaced by a male).

- 6 -

that Plaintiff performed according to her employer's legitimate expectations.[5] Specifically, Defendant argues that the fifteen serious customer complaints about the PHX terminal during the three months preceding Plaintiff's termination undisputedly demonstrate that Plaintiff's performance failed to meet her employer's legitimate expectations. (Doc. 63 at 12). In Response, Plaintiff attempts to downplay the seriousness of the customer complaints, provides a positive "self-assessment" of her pre-termination performance, and argues that this self-assessment, when combined with various favorable comparisons to the Los Angeles ("LAX") terminal,[6] demonstrates that Plaintiff met Defendant's legitimate performance expectations. (Doc. 67 at 6–8, 11, 16–17).

To make her prima facie case, Plaintiff must produce evidence that she was performing according to Defendant's legitimate performance expectations. "The Ninth Circuit characterizes the crux of this element as whether the plaintiff 'adequately' performed her job, which 'suggests a standard less than perfect performance.' " *Whitley v. City of Portland*, 654 F. Supp. 2d 1194, 1208 (D. Or. 2009) (quoting *Moorehead v. Chertoff*, No. C-07-1205-MJP, 2008 WL4810308, at *2 (W.D. Wash. Nov. 3, 2008) (citing *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1031 (9th Cir. 2006))). Although an employer cannot legitimately expect perfect performance, "employers can legitimately expect an employee's performance not to engender customer complaints." *Parada v. Great Plains Int'l of Sioux City, Inc.*, 483 F. Supp. 2d 777, 807 (N.D. Iowa 2007) ("[T]he record shows beyond dispute that [plaintiff] was not meeting that legitimate expectation, where there is evidence of serious customer complaints against her and no evidence, whatsoever, that the complaints did not occur."); *see*, *U.S. E.E.O.C. v. Republic Servs., Inc.*, 640 F. Supp. 2d 1267, 1301 (D. Nev. 2009) (finding customer

---

[5] Under *McDonnell Douglas*, "the elements and contours of a prima facie case will differ according to the facts at hand." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010). Here, the Parties agree that as to the second element, Plaintiff must prove she was meeting Defendant's "legitimate performance expectations." (Doc. 63 at 12; Doc. 67 at 6–8). Consonant with the facts of this case, the Court agrees.

[6] Plaintiff argues that "LAX and PHX were comparable Reddaway 'impact' terminals because they were the only union terminals in the Southern Division." (Doc. 67 at 7).

- 7 -

complaints about an employee's performance relevant when determining that the employee did not demonstrate a prima facie case of satisfactorily performing his duties).

Here, the record demonstrates that Defendant received numerous customer complaints about the PHX terminal during the months leading up to Plaintiff's termination. (DSOF ¶¶ 38–65). Indeed, it is undisputed that in the three-months preceding Plaintiff's termination, Defendant received at least fourteen serious complaints, some of which included threats to cease doing business with Defendant.[7] (DSOF ¶¶ 41– 65; *see* PSOF ¶¶ 41–65 (admitting that the customer complaints occurred). Moreover, it is undisputed that during this three-month period, Defendant repeatedly stressed to Plaintiff that engendering such serious customer complaints fails to meet Defendant's performance expectations. (DSOF ¶ 49, Ex. 34 (where Schuster emailed Plaintiff that undelivered shipments "placed the company in a tenuous situation. The root cause was a loss of internal control, resulting in shipments sitting for weeks without visibility or proper disposition. This is unacceptable Gail, and you can expect that there will be follow up accountability regarding the loss of internal control."); PSOF ¶ 49 (disputing the cause of the complaints, but not Defendant's warning); *see also*, DSOF ¶¶ 41, 44, 45, 47, 50, 51, 53, 54, 57; PSOF ¶¶ 41, 44, 45, 47, 50, 51, 53, 54, 57 (disputing Plaintiff's responsibility for the various serious complaints, but not that Defendant's warnings occurred). Additionally, Plaintiff's 2008 NOCA clearly stated that serious customer complaints are grounds for discharge. (DSOF ¶ 24, Ex. 14; PSOF ¶ 24).

Despite not disputing that Defendant repeatedly warned Plaintiff that such serious and numerous customer complaints were unacceptable, Plaintiff appears to contend that she was nonetheless meeting Defendant's legitimate performance expectations by disputing both the seriousness of the complaints and her responsibility for them. (PSOF ¶¶ 41–65). For example, Plaintiff argues that, "in context," only 0.033% of bills

---

[7] For example, on January 28, 2011, a PHX Terminal service failure was so serious that the customer "officially" requested that its supplier "use ANYBODY other than [Defendant] to ship out future tire orders to Phoenix." (DSOF ¶ 42, Ex. 29; PSOF ¶ 42 (not disputing that a customer made this complaint)).

- 8 -

1   (individual pick-up or deliver jobs) during her final three months engendered a customer
2   complaint.[8] (Doc. 67 at 11). When presented in this manner, 15 serious customer
3   complaints, indeed, appears small. However, the Court notes that Plaintiff commits the
4   same error she places at Defendant's feet: a lack of context. Plaintiff provides no
5   evidence of, and the record contains nothing from which the Court could reasonably
6   infer, the percentage of serious customer complaints that Defendant accepts as within its
7   legitimate performance expectations of its terminal managers. For example, although
8   Plaintiff submits evidence suggesting that the overall service failure rate of the PHX
9   terminal was comparable to that of the LAX terminal (*see* Doc. 267 at 7), Plaintiff points
10  to no evidence,[9] and the Court finds none in the record, that the LAX terminal's service
11  failures engendered *any* similarly serious customer complaints, let alone a comparable
12  rate of serious complaints. Further, Plaintiff presents no historical evidence of either other
13  terminal manager or her own serious customer complaint rates in prior years where the
14  other terminal manager or Plaintiff received "meets expectations" performance reviews.
15  (2008 and 2009 Annual Performance Reviews of Plaintiff, PSOF at Exs. 37–38; 2010
16  Annual Performance Review of Joe Torres, LAX Terminal Manager, PSOF at Ex. 27).

17         Similarly, Plaintiff's continued insistence that she did not personally cause the
18  various service failures that engendered the serious customer complaints (*see* PSOF
19  ¶¶ 41–65) fails to demonstrate the prima facie element that she was meeting Defendant's
20  legitimate performance expectations. Even fully accepting Plaintiff's contention that the
21  PHX terminal's understaffing or the (in)actions of either Plaintiff's subordinates or other
22  terminals were the true causes of the serious customer dissatisfaction, Plaintiff has
23  repeatedly acknowledged that she held ultimate responsibility for the operations of the

---

25  [8] Plaintiff calculates this percentage by dividing the approximately 46,000 bills
26  handled during January through March, 2011 by 15 complaints (15/46,000 = 0.000326, which equals approximately 0.033%).

27  [9] *See Orr v. Bank of Am.*, 285 F.3d 764, 775 (9th Cir. 2002) (internal quotation
28  omitted) ("Judges need not paw over the files without assistance from the parties."); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("[J]udges are not like pigs, hunting for truffles buried in briefs.") (citation omitted).

PHX terminal. (DSOF ¶ 14; PSOF ¶ 14 (admitting that Plaintiff held ultimate responsibility for all operations of the PHX terminal, including day-to-day operational and supervisory responsibilities over customer service); *see* DSOF ¶¶ 45, 47, 54, 57; *see* PSOF ¶¶ 45, 47, 54, 57 (not disputing that Plaintiff expressed an acceptance of ultimate responsibility, but arguing that the "service failures were anticipated and resulted from" understaffing)). Moreover, given the fact that Defendant's annual performance evaluations, including those of Plaintiff, explicitly evaluate terminal manager performance, in part, on rates of service failures and customer satisfaction (2008 and 2009 Annual Performance Reviews of Plaintiff, PSOF at Exs. 37–38; Draft 2010 Annual Performance Review of Plaintiff, DSOF at Ex. 71), the Court finds it unreasonable to infer or conclude that Plaintiff's position as terminal manager did not include ultimate responsibility for PHX terminal service failures and the satisfaction of PHX terminal customers.

Lastly, Plaintiff asks the Court to infer that Plaintiff was meeting Defendant's legitimate performance expectations because Plaintiff received more customer compliments (23) than complaints (15) during the relevant time period. (Doc. 67 at 11). However, such an inference is not reasonable. Generally, an employer legitimately expects its employees to *both* not engender serious customer dissatisfaction (which may be manifested as complaints) *and* to satisfactorily service customers (which may be expressed in compliments). The record presented to the Court provides no evidence or basis for a reasonable inference that Defendant peculiarly excused terminal managers of serious customer dissatisfaction as long as other customers expressed some degree of satisfaction. In fact, the undisputed record demonstrates the opposite: Defendant repeatedly warned Plaintiff that the serious customer complaints were unacceptable. (2008 NOCA, DSOF at Ex. 14; DSOF ¶¶ 24, 41, 44, 45, 47, 49–51, 53, 54, 57; *see* PSOF ¶¶ 24, 41, 44, 45, 47, 49–51, 53, 54, 57). Thus, the numerous serious customer complaints during the months preceding Plaintiff's termination undisputedly demonstrate that Plaintiff's performance failed to meet her employer's legitimate expectations.

1 Nonetheless, Plaintiff insists that her positive self-assessment of her performance during the three months prior to her termination, in which she rates herself as "meets expectations" based upon various favorable comparisons to the LAX terminal, sufficiently demonstrates her prima facie case. (Doc. 67 at 6–8). "In fact, while a plaintiff's self-assessment is a relevant consideration, by itself it is not evidence sufficient to satisfy this element of a plaintiff's prima facie case." *Whitley*, 654 F. Supp. 2d at 1209; *see, e.g.*, *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 659–60 (9th Cir. 2002) (holding that plaintiff employee's self-assessment of his performance was relevant, and when bolstered by other evidence that he had received no formal write-ups and that his work-product equaled that of his co-workers, was sufficient to prove a prima facie case); *Lyons v. England*, 307 F.3d 1092, 1115 (9th Cir. 2002) (finding plaintiff's self-assessment is "relevant in combination with other circumstantial evidence of qualifications" when demonstrating a prima facie failure to promote claim).

Here, Plaintiff's positive self-assessment is based on favorable comparisons to the LAX terminal using such metrics as the number of Teamsters Union grievances, various measures of the work required per bill, safety incidents, and the rate of service failures.[10] (Doc. 67 at 6–8). Plaintiff, however, makes no attempt to "bolster" her self-assessment with other relevant evidence.[11] *See Aragon*, 292 F.3d at 659–60. Instead, Plaintiff's admittance that numerous serious customer complaints occurred tarnishes her positive

---

[10] The rate of service failures has some relation to customer complaints in so far as a customer is unlikely to complain absent a service failure. However, as noted above, Plaintiff provides no indication that the LAX terminal received any serious customer complaints during the relevant time.

[11] To the extent that Plaintiff points to 33 years of previous good performance reviews to bolster her self-assessment, the Court notes that, in fact, Plaintiff submits only two years of PHX terminal manager "meets expectations" annual performance reviews from Defendant. (PSOF at Exs. 37–38). Between 1978 and 2007, Plaintiff was employed by "Bestway," not Defendant, and thus any such reviews (which have not been submitted) are irrelevant. Plaintiff has not submitted her 2007 annual performance review. Additionally, Schuster's draft 2010 annual performance review notes that Plaintiff's "team building effectiveness has once again come into question as internal controls continue to fail, and her effectiveness with regards to internal and external cut[omer] suc[cess] & satisfaction has significantly diminished." (DSOF ¶ 95, Ex. 71; PSOF ¶ 95).

self-assessment. Plaintiff has not adduced any evidence that meeting Defendant's performance expectations in some areas absolves seriously deficient performance in customer satisfaction. Thus, given Plaintiff's acknowledgment of the numerous serious customer complaints, Plaintiff's positive self-assessment is insufficient evidence to support a reasonable inference that her performance met Defendant's legitimate expectations. *See Nguyen v. Qualcomm, Inc.*, No. 09CV1925–MMA, 2011 WL 1119564, *8 (S.D. Cal. Mar. 28, 2011) (holding that absent additional evidence, a plaintiff's self-assessment alone is insufficient to establish a prima facie case).

Therefore, the Court finds that Plaintiff has failed to demonstrate an essential element of a prima facie case: that her performance met Defendant's legitimate expectations. Accordingly, under the *McDonnell Douglas* burden shifting framework, Defendant is entitled to summary judgment. However, because the degree of proof is so low at the prima facie stage, the Court makes the following additional alternative findings regarding Defendant's legitimate, nondiscriminatory reason for Plaintiff's termination and Plaintiff's showing of pretext.

**C. Defendant's Articulated Legitimate, Non-Discriminatory Reasons for Terminating Plaintiff's Employment and Plaintiff's Evidence of Pretext**

Defendant has clearly articulated a legitimate non-discriminatory reason for Plaintiff's termination. The question then is whether there is any evidence of pretext. Because Plaintiff offers only circumstantial evidence of sex discrimination, Plaintiff

> must proffer "specific" and "substantial" evidence of pretext to overcome [defendant's] summary judgment motion. *See Manatt* [*v. Bank of Am.*]*,* 339 F.3d [792,] 801 [(9th Cir. 2003)] ("Because Manatt failed to introduce any direct or specific and substantial circumstantial evidence of pretext, summary judgment for the [employer] must be affirmed."); *Brown v. City of Tucson,* 336 F.3d 1181, 1188 (9th Cir. 2003); *Bradley v. Harcourt, Brace and Co.,* 104 F.3d 267, 270 (9th Cir. 1996) ("To avoid summary judgment, Bradley must do more than establish a prima facie case and deny the credibility of the [defendant's] witnesses. She must produce specific, substantial evidence of pretext.") (internal quotation marks and citations omitted).

*Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1066 (9th Cir. 2003). Indeed, "the focus of the pretext inquiry is not to determine whether [Defendant] was correct in determining that [Plaintiff's] job performance was unsatisfactory, but simply whether [Plaintiff's]

1  performance was the real reason for the termination. *Diaz v. Eagle Produce Ltd. P'ship*,
2  521 F.3d 1201, 1214 n.7 (9th Cir. 2008) (citing *Douglas v. Anderson,* 656 F.2d 528, 533
3  n. 5 (9th Cir. 1981)); *see also DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir.
4  1998) ("[W]hen an employer articulates a reason for discharging the plaintiff not
5  forbidden by law, it is not our province to decide whether the reason was wise, fair, or
6  even correct, ultimately, so long as it truly was the reason for the plaintiff's
7  termination.") (internal quotation marks and citation omitted).

8  Here, Plaintiff provides three categories of pretext allegations: (1) "Plaintiff met
9  the reasonable expectations of Defendant before she was fired" (Doc. 67 at 9); (2)
10 "Defendant had a "corporate culture" of prejudice (*id.* at 9–13); and, (3) Defendant's
11 reasons for firing Plaintiff (customer complaints) are a false, post hoc rationalization (*id.*
12 at 13–17).

13 Initially, the Court notes that the first and third categories are essentially the same
14 argument and based on the same evidence in the record. As explained above, the
15 evidence in the record does not create a genuine issue of material fact that Plaintiff was
16 meeting the legitimate performance expectations of Defendant prior to her termination.
17 Rather, the undisputed evidence of serious customer complaints establishes that Plaintiff
18 was *not* meeting Defendant's legitimate performance expectations.

19 Nonetheless, Plaintiff stresses her positive self-assessment and positive
20 comparisons to other terminal managers. However, "an employee's own statement that he
21 was performing at a level equal to that of other employees is not enough to raise a
22 genuine issue of material fact." *Aragon*, 292 F.3d at 660 (9th Cir. 2002) (citing *Bradley v.*
23 *Harcourt, Brace & Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("[A]n employee's subjective
24 personal judgments of [his] competence alone do not raise a genuine issue of material
25 fact."). Plaintiff also claims that the evidence demonstrates that the PHX terminal
26 "outperformed other terminals managed by male managers in service in the last months
27 of her employment." (Doc. 67 at 14). Even accepting this as true, it is based solely on the
28 service failure rate and not the seriousness of those service failures. Plaintiff's

comparison wholly fails to address the numerous serious customer complaints that Plaintiff admits occurred. "Unless [Plaintiff] attacks the specific reasons given for a termination, a plaintiff who stresses evidence of satisfactory performance is simply challenging the wisdom of the employer's decision, which we have consistently refused to review. *Anderson v. Stauffer Chem. Co.*, 965 F.2d 397, 403 (7th Cir. 1992) (citing *Castleman v. Acme Boot Co.,* 959 F.2d 1417, 1422 (7th Cir. 1992) ("Neither the jury nor this Court is empowered to act as a 'super-personnel department' and decide if [a] firing was unwise or unjustified.")).

Plaintiff further argues that the numerous serious customer complaints were not her fault and were reasonably expected by Defendant because of severe understaffing of the PHX terminal.[12] (Doc. 67 at 13–14; PSOF ¶¶ 41–65). Plaintiff argues that the understaffing forced her to work 7–8 hours dispatching each morning instead of performing her managerial duties, but that no male manager had the same burden. (*Id.* at 12–15). Plaintiff argues that these facts demonstrate that Defendant set Plaintiff up to fail in order to manufacture pretext for her termination. (*Id.* at 13–14). Plaintiff's "conspiracy theory," however, is not supported by the evidence in the record or reasonable inferences drawn from that evidence. *See Gold v. Parker Toyota, Inc.*, 2:09-CV-00618-EJL, 2011 WL 675239 (D. Idaho Feb. 17, 2011). Rather, Plaintiff admits that during the relevant time, in response to a dire economic situation, Defendant instituted massive layoffs and a company-wide hiring freeze preventing Plaintiff from hiring an additional dispatcher. (Doc. 67 at 4; PSOF ¶ 250–53; DSOF ¶¶ 146–53, 156, 160, 162, 163, 173). Furthermore, Plaintiff readily admits that because the PHX terminal was unionized, she was constrained in hiring any short-term drivers or loaders to alleviate stress on the PHX terminal. (Doc. 67 at 6–7).

Plaintiff also attempts to connect understaffing with gender animus by arguing that

---

[12] Even accepting that the various service failures that engendered the serious customer complaints were not Plaintiff's "fault," there is no dispute of material fact that, whether "fair" or not, Defendant legitimately expected the buck to stop at Plaintiff, the terminal manager.

1  additional staff was hired after her termination for the benefit of her male replacement.
2  (Doc. 67 at 8, 13). However, the Court notes that Schuster hired additional part-time,
3  casual dock-workers to clear the back-log that had amassed during Plaintiff's tenure
4  immediately after Plaintiff's termination and *before* Plaintiff's replacement was hired.
5  (DSOF ¶ 176; PSOF ¶ 176). Furthermore, because an employee began a 5-month medical
6  leave a few days before Plaintiff was terminated, her replacement was able to allocate the
7  now available man hours to a new hire who took over some dispatching duties until the
8  absent employee returned from leave. (DSOF ¶¶ 179–81; PSOF ¶¶ 179–81).

9  Thus, Plaintiff's dispatcher duties and the PHX terminal's understaffing are not
10 specific or substantial evidence of pretext and do not establish a genuine dispute of
11 material fact. Simply put, Plaintiff has not demonstrated a genuine issue of material fact
12 that she was performing her job "well enough to rule out the possibility that [s]he was
13 fired for inadequate job performance."[13] *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d
14 1054, 1063 n.8 (9th Cir. 2002) (quoting *Pejic v. Hughes Helicopters, Inc.,* 840 F.2d 667,
15 672 (9th Cir. 1988)).

16 Plaintiff's argument that "Defendant had a "corporate culture" of prejudice (Doc.
17 67 at 9–13) is similarly unsupported by specific, substantial evidence of pretext. Plaintiff
18 bases her argument primarily on the dearth of female employees throughout Defendant's
19 operation. (Doc. 67 at 9–10). Plaintiff claims that all of her managers and all other
20 terminal managers were male. (Doc. 67 at 9). Plaintiff further contends that all of the
21 drivers and dockworkers at the PHX terminal were male and "did not like being managed
22 by a woman." (*Id.*). Plaintiff's broad demographic statements are not specific or
23 substantial evidence of pretext because Plaintiff has made no attempt to eliminate any
24 non-sex discriminatory reasons for the lack of gender diversity. *Turner v. Pub. Serv. Co.*
25 *of Colo.*, 563 F.3d 1136, 1147–48 (10th Cir. 2009). Indeed, the Court notes that both

---

27 [13] Plaintiff has undisputedly established that she worked incredibly hard in an attempt to meet the legitimate expectations of her terminal manager position.
28 Nonetheless, it is a disappointing fact of life that an earnest desire to succeed, even when coupled with diligent work, does not always produce success.

- 15 -

1   because Plaintiff had hiring power over the drivers and dockworkers in the PHX terminal,
2   and because of their subordinate relationship, their gender composition (all male) is
3   wholly irrelevant.

4   With regard to Plaintiff's male superiors, Plaintiff admits that none ever made any negative statements related to gender. (DSOF ¶¶ 113–14; PSOF ¶¶ 113–14 (admitting same)). Plaintiff does relate an incident where Schuster yelled at her (Doc. 67 at 15–16) and other circumstantial evidence that Schuster may not have liked her (*see id.* at 14–16). However, the record lacks any indication that these incidents were motivated by gender animus as opposed to ordinary dislike. *See Joki v. Rogue Cmty. Coll.*, 544 F. App'x 679, 682 (9th Cir. 2013); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) ("[S]tandards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.' "). Because, "personal conflict does not equate with discriminatory animus," *Barnett v. Dep't of Veterans Affairs*, 153 F.3d 338, 342–43 (6th Cir. 1998), Plaintiff's evidence is not specific or substantial evidence of pretext and does not raise a genuine dispute of material fact. *See also Burniche v. Gen. Elec. Automation Servs., Inc.*, 306 F. Supp. 2d 233, 243 (N.D.N.Y. 2004) ("statements and conduct" that "largely reflect that plaintiff and [defendant] simply [do] not get along well," "without more, are insufficient grounds from which to infer discriminatory animus in [plaintiff's] termination.").

In sum, Plaintiff offers no specific and substantial evidence that her termination was motivated by anything other than Defendant's loss of confidence in her management abilities, provoked by numerous serious customer complaints during the final three months of her employment.[14] Accordingly, Plaintiff has not established that genuine issues of fact exist regarding any evidence of pretext, and the motion for summary judgment on Plaintiff's sex discrimination claim is granted.

---

[14] "Plaintiff has no evidence showing that any of the customer complaints made about her and the Phoenix terminal and the resulting loss in confidence were because she was a woman or was, in any way, correlated to her gender." (DSOF ¶ 102; *see* PSOF ¶ 102 (not disputing same)).

- 16 -

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 63) is GRANTED.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment for Defendant.

Dated this 30th day of April, 2014.

James A. Teilborg
Senior United States District Judge